# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RONALD GOLLIHARE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-14-195-RAW-SPS |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Ronald Everett Gollihare requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 15, 1954, and was fifty-seven years old at the time of the administrative hearing (Tr. 38). He earned his GED, and has worked as a highway-maintenance worker and janitor (Tr. 28, 163). The claimant alleges inability to work since January 5, 2010, due to COPD, breathing problems, and problems with his legs and feet (Tr. 162).

## Procedural History

On January 5, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Doug Gabbard II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 31, 2012 (Tr. 18-29). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the ability to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.157(c) and 416.967(c), *i. e.*, he could lift/carry fifty pounds

occasionally and twenty-five pounds frequently, and stand/walk/sit six hours in an eight-hour workday, but that the claimant must avoid fumes, dusts, odors, gases, and other irritants and pollutants (Tr. 23). The ALJ therefore concluded that the claimant was able to perform his past relevant work as a janitor (Tr. 28).

## Review

The claimant contends that the ALJ erred: (i) by failing to develop the record by not obtaining a physical RFC from the consultative examiner, not recontacting his treating physician, and not sending him for a psychological consultation; (ii) by failing to classify his back pain and mental impairments as severe; (iii) by improperly assessing his RFC; (iv) by improperly rejecting his credibility; (v) by finding that he could return to his past relevant work; and (vi) that the Appeals Council erred by failing to consider new evidence submitted following the ALJ's decision.[2] The undersigned Magistrate Judge finds the ALJ *did err* when he failed to consider all of the claimant's impairments, both severe and nonsevere, when assessing the claimant's RFC, and the case should therefore be reversed.

The ALJ found that the claimant had the severe impairments of obesity and COPD, as well as the nonsevere impairments of pain in his back, legs, feet, hands, and

---

[2] Evidence submitted to the Appeals Council reflects that the claimant's representative submitted a consultative psychological evaluation of the claimant that was conducted on December 18, 2012 by Robert L. Spray, Jr., Ph.D. PA. *See* Docket No. 16, Ex. 1. This evidence was not made part of the administrative record, but was instead submitted by claimant's counsel as an attachment to the Opening Brief. Because the undersigned Magistrate Judge finds this case should be reversed and remanded for the reasons set forth below, he declines to address this evidence and whether the Appeals Council properly considered it. On remand, however, the ALJ is instructed to consider *all* evidence that is made part of the administrative record.

arms, and a mental impairment, but that there was insufficient evidence to establish the claimant's allegations of migraines, dizziness, and vertigo (Tr. 20-22). The medical evidence reflects that on October 18, 2010, the claimant complained of allergy symptomology, and was given an intramuscular injection (Tr. 234). On December 27, 2010, the claimant presented to the emergency room with a cough and pain in his ribs and during deep breaths, and was diagnosed with an upper respiratory infection (Tr. 282).

On January 2, 2011, the claimant presented with a cough and was noted to have pleuritic chest pain (Tr. 291). On January 4, 2012, the claimant was treated for an acute exacerbation of COPD, and prescribed an inhaled steroid (Tr. 323). A chest X-ray revealed no acute disease (Tr. 333). At a follow-up visit the next month, he still had a cough, but no dyspnea or chest pain, and was again told to check up on the prescription assistance program and was further counseled on tobacco cessation (Tr. 326). On August 1, 2012, the claimant presented with complaints of being stressed out and unable to sleep, and was assessed with COPD, depression, insomnia due to stress, acute stress disorder, and anxiety disorder NOS (Tr. 329). He was prescribed a medication regimen for these impairments, and a note in the record by the Physician's assistant reflects that the claimant scored "severe" on both anxiety and depression screenings (Tr. 330).

Medical records from the claimant's treating physician, Dr. William Willis, reflect that the claimant requested an MRI for back pain on May 11, 2011, but it was not done due to lack of documentation of back pain (Tr. 293). On October 19, 2012, Dr. Willis completed a physical medical source statement, indicating that the claimant could

sit/stand up to one hour total in an eight-hour workday and walk thirty minutes out of an eight-hour workday, and could only sit/stand thirty minutes at a time, and walk fifteen minutes at a time, and further needed rest breaks at hourly intervals, to alternate between sitting and standing every 15 minutes, and could only occasionally lift/carry up to ten pounds (Tr. 334). He stated that the claimant did not need to elevate his legs and his lower extremities were not limited, but that he could only occasionally push/pull and work in extended position; rarely work above shoulder level; never work overhead or reach; rarely grasp, finger, crawl, stoop, or climb; occasionally crouch, kneel, bend, and squat; and never balance (Tr. 335-336). Finally, he indicated that the claimant had marked restrictions related to hazardous conditions of unprotected heights and dangerous moving machinery; moderate restrictions related to vibrating tools and exposure to extremes and sudden or frequent changes in temperature or humidity; and only mild restrictions related to exposure to respiratory irritants, driving/riding in automotive equipment, exposure to high noise levels, and limitation on fine visual acuity (Tr. 336). In support of these statements, he stated that the "objective" basis for these findings were the claimant's decreased range of motion, and an MRI (Tr. 336).

On June 16, 2011, Dr. Adel Malati, M.D., conducted a comprehensive internal medicine examination with comprehensive pulmonary function test (Tr. 297). Upon examination, the claimant revealed in his social history that he smokes two packs a day, but Dr. Malati found he was awake, alert and oriented, in no acute distress, with an impression of: (i) history of COPD, (ii) history of chronic back pain, and (iii) history of

hyperlipidemia (Tr. 300). He noted that the claimant had a nice normal gait; could sit, stand, and lie down without difficulty; had a full range of motion; had bilateral hand grip 5/5; and could perform heel/toe walking without difficulty (Tr. 300). He made no findings of ongoing problems in relation to the performed pulmonary function test (Tr. 307). The following month, a state reviewing physician opined that the claimant could perform the full range of medium work (Tr. 310).

At the administrative hearing, the claimant testified that he was on pain medications for his back because he could not afford any other kind of treatment, and that he was having difficulty with swelling in his hands and feet (Tr. 41-42). He testified that he had not actually undergone an MRI, that he uses inhalers for his COPD, and stated that he did light housework around his house, drove about once a day, and went to the grocery store a couple of times a week (Tr. 43-45). He testified that Dr. Judy Palin treated him with medication management for his depression and COPD, but that he was not receiving counseling (Tr. 50, 53-54), and that he has dizzy spells every day (Tr. 56).

In his written opinion, the ALJ provided a thorough summary of the claimant's hearing testimony and a majority of the medical evidence. At step two, he discussed the claimant's impairments, explaining those he deemed severe and not severe (Tr. 20-22). At step four, he noted the claimant's testimony, as well as the medical evidence related to the claimant's COPD (Tr. 25-28). He gave Dr. Willis's opinion no weight, as completely unsupported by the record because it was: (i) completed over a year after his last treatment record, (ii) the claimant never actually received a lumbar MRI, and (iii) the

claimant had essentially normal findings on examination, including related to his range of motion (Tr. 26). He gave great weight to the state reviewing physician, but added a restriction on exposure to pulmonary irritants, then determined that the claimant was not credible (Tr. 27).

First, the undersigned Magistrate Judge finds that the ALJ erred by failing to discuss the claimant's severe impairment of obesity at step four. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2002 WL 34686281 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *6. The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.* The ALJ recited the foregoing authorities as to obesity at step three, then stated that he had considered the impact on the claimant's obesity and that the RFC reflected the degree of limitation he had found in connection with it (Tr. 23). Even so,

the ALJ failed to connect the claimant's obesity in his step four findings as to the claimant's RFC, or to determine whether the medical evidence demonstrated any *additional or cumulative* effects from his obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC.") [citation omitted]; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). Given the impact that obesity can have on the cardiovascular and respiratory systems, the ALJ erred in his failure to address the claimant's obesity at step four. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p.

The claimant also argues that the ALJ erred in failing to classify his back pain and

mental impairment(s) as severe impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step

four.  *Langley*, 373 F.3d at 1123.  *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**